# CHARLESTON.

CHAMBERS *et al.* v. PERRINE *et al.*

Submitted November 6, 1917.   Decided November 13, 1917.

The demurrer to the bill in this cause, which sought cancellation of the assignment of a lease of land for oil and gas and removal thereof as a cloud on plaintiff's title thereto, was properly sustained on the following grounds:

1. QUIETING TITLE—*Oil and Gas Lease—Cancellation—Demurrer.*
   Because it failed to allege possession by plaintiff of the leased premises.   (p. 324).

2. SAME—*Jurisdiction—Forfeitures.*
   Because equity will not ordinarily entertain jurisdiction to enforce a forfeiture for breach of conditions subsequent or of implied covenants to drill wells or to protect the leased premises from drainage.   (p. 325).

3. SAME—*Oil and Gas Lease—Bill.*
   Because the bill is silent as to whether the delay rentals provided for in the lease and in the assignment thereof have been paid, and because no notice to drill within any rental period is alleged to have been given the assignees, and for failure therein, declaring a forfeiture of the assignment on that ground. All upon the principles enunciated in *Carper* v. *United Fuel Gas Co.,* 78 W. Va. 433, 89 S. E. 12.   (p. 325).

Certified by Circuit Court, Roane County.

Suit by O. J. Chambers and others against M. J. Perrine and others.   A demurrer was sustained to the bill and the cause certified.

*Order certified affirmed.*

*Ryan & Boggess,* for plaintiffs.

*Pendleton, Mathews & Bell,* for defendants.

MILLER, JUDGE:

The sole question certified for our decision is whether the circuit court properly sustained the defendants' demurrer to the bill.

According to the allegations of the bill plaintiff Chambers was the lessee in a.lease for oil and gas covering thirty-eight and a half acres of land, more or less, situate in Roane County, executed to him in March, 1912, by Rachael Bennett and others, a half interest in which the bill alleges was assigned by Chambers to his co-plaintiff on February 10, 1916. Subsequently on June 30, 1914, Chambers made a conditional assignment of the lease to defendants, Baker and Smith, whereby, and as part consideration therefor, the assignees agreed and bound themselves to complete a well on the leased premises on or before January 1, 1915, through the Berea Grit Sand unless oil or gas should be found in paying quantities before reaching that sand, or in default thereof to pay to said Chambers, his heirs and assigns fifty dollars per annum, payable quarterly in advance for said delay until a well should be completed as aforesaid, and as a further consideration for such assignment, said assignees further agreed to pay to the lessors in said lease the quarterly rentals or commutation money for delay in drilling as provided therein, and also the one-eighth part of all the oil produced and saved from the premises, and also sixty-two and 50/100 dollars, in advance, each three months for the gas from each and every gas well drilled thereon, the proceeds from which should be marketed and used off the premises, and also to wholly comply with all the agreements, stipulations and covenants on the part of the lessee, Chambers, contained therein; and in addition thereto to deliver to the credit of Chambers, his heirs, executors, administrators and assigns free of cost, in the pipe line to which the wells might be connected, the equal one-eighth part of all the oil produced and saved from said premises, and also one-eighth of all the income from all the gas produced, and in the event they should fail to comply with all or any of the conditions and stipulations therein set out, said agreement should become null and void and the said lease revert to said Chambers, his heirs or assigns, and

which stipulations it was also provided should extend to the heirs, executors, administrators and assigns of the said parties of the second part.

It is not alleged in the bill that there had been any default on the part of said Baker and Smith in the payment to said lessors of the commutation or delay money as provided in said lease, or of any of the other specific covenants on the part of the lessee therein, nor in the payment to Chambers of the delay money stipulated in his assignment to them, except the general charge that they had not complied with the covenants in said lease nor with the terms and conditions of said assignment; there is no specific charge that the delay rentals provided for therein had not been paid; but in the same connection it is alleged that although said Baker and Smith have wholly failed to comply with the covenants in said lease, and in said written assignment thereof, they were threatening to and unless enjoined would drill said land.

Apparently the only other grounds for the relief prayed for are that no wells have been drilled by Baker and Smith on the leased premises; that a large number of producing wells have been drilled on adjoining lands, the exact production from which it is alleged is unknown to plaintiffs, but that they are in such close proximity to the exterior boundaries of the leased premises, as to drain the same of large quantities of oil, and have and will continue to do so, unless a proper number of off-set wells are drilled on the leased lands within the next six months, and that unless such drilling is done it will result in irreparable loss to said lessors as well as to plaintiffs. The location of the wells on the adjoining lands or the distance thereof from the land covered by said lease is not alleged. It is also charged that in order to protect the lines thereof at least six wells should have been drilled and completed on said lands during the year prior to the bringing of this suit.

Plaintiffs also allege that they are threatened by their lessors with suit for specific performance of the covenants of said lease, and whereby they are liable to suffer loss; that they are willing and anxious and able to drill and operate said land and to comply with each and every covenant in said

lease, if allowed to do so, and are not interfered with therein by said Baker and Smith, as they have threatened to do, and will do so unless restrained therefrom.

The lease itself which is referred to in the bill is not filed or made a part thereof, but it is alleged it will be filed and made a part thereof if required by the court or by any party in interest. It is not alleged that said lease contains any clause or condition of forfeiture for failure to drill or protect the lines from drainage, and certainly there is nothing in the assignment of the lease from Chambers to Baker and Smith, forfeiting the rights of the assignees for failure to drill or protect the lines.

The bill alleges that plaintiffs have endeavored to get Baker and Smith to comply with the contract of assignment, but the written notice dated November 29, 1916, served on them December 8, 1916, was to the effect that they had failed to comply with the provisions, requirements and covenants contained in said lease and in the assignment thereof, but not specifying the particular provisions or covenants referred to, and reciting that whereas a large number of producing oil and gas wells had been located so as to drain, and had for a long time been draining, said land, they were thereby notified that plaintiff thereby declared said assignment of said lease, and all the oil and gas rights thereunder annulled and terminated, and that they thereby assumed payment of all rentals to the lessors in said lease and would immediately begin to operate thereunder.

The prayer of the bill is that said assignment be canceled and removed as a cloud on said lease, and that Baker and Smith and all persons claiming under them be enjoined and inhibited from operating on said land for oil or gas and from interfering with plaintiffs in the operation thereof, and that a receiver be appointed to take charge and operate said lease, according to its covenants, and that an account might be taken, etc., and for general relief.

As the bill nowhere alleges possession by plaintiffs a court of equity will not entertain them for the purpose of removing cloud from the legal title to the land or to their leasehold interest therein. With legal title a court of law ordin-

arily furnishes a complete and adequate remedy. *Horse Creek Coal Land Co.* v. *Trees,* 75 W. Va. 559, 84 S. E. 377, and cases cited.

Nor will parties as a general rule be entertained in a court of equity to enforce a forfeiture for conditions subsequent. In such cases also a party is ordinarily left to his legal remedy. *Craig* v. *Hukill,* 37 W. Va. 520; *Railroad Co.* v. *Triadelphia,* 58 W. Va. 520; *Spies* v. *Railroad Co.,* 60 W. Va. 389, 55 S. E. 464; *Headley* v. *Hoopengarner,* 60 W. Va. 626, 55 S. E. 744; *Pheasant* v. *Hanna,* 63 W. Va. 613, 60 S. E. 618; *Adams* v. *Railway Co.,* 64 W. Va. 188, 61 S. E. 341; *Newton* v. *Kemper,* 66 W. Va. 130, 66 S. E. 102, and *Horse Creek Coal Land Co.* v. *Trees, supra.*

The only other ground relied on for relief which can be reasonably extracted from the rather inconsistent allegations and prayers of the bill, is the alleged failure of Baker and Smith to drill wells and protect the lines of the leased land from drainage. We have decided, in an action at law, that when the lease contains no express covenant, and implied covenants to drill and protect the lines are alone relied on, and the declaration is silent as to whether the delay rentals have been paid, the demurrer thereto should be sustained; and we also decided in the same case that when a lease for a specific term imposes the alternative duty to drill or pay delay rental, there is no implied covenant for diligent operations merely to make the lease profitable to the lessors, the delay rentals being regarded sufficient considerations for postponement of such operations, and we also held in the same case that there is no implied covenant in such a lease, operative within the period of postponement, to drill off-set wells to prevent drainage through wells upon adjoining territory, but that there is an implied condition that in the event of such drainage, or imminent danger thereof, that the lessee will, upon demand of the lessor, drill a well on the leased premises for such purpose within the last period for which the delay rental has been or shall be accepted, or commence one within said period and diligently prosecute the work on it, accompanied by notice of intention to refuse to receive further payments of rental and declare a forfeiture of the

lease for failure to drill the same. *Carper* v. *United Fuel Gas Co.*, 78 W. Va. 433, 89 S. E. 12.

The Carper Case was an action at law, but the principles declared therein are as applicable in this case as in that.

For these reasons we are of opinion that the demurrer to the bill was properly sustained and that the order certified should be affirmed.

*Order certified affirmed.*