# CHARLESTON.

J. HENRY DUTTERER *et al.* v. FLORA LOGAN *et al.*
and
J. HENRY DUTTERER, *Ex'r, Etc.* v. R. STANLEY DUTTERER,
*Ex'r, et al.*

(Nos. 5821 & 5821-A)

Submitted February 1, 1927. Decided February 15, 1927.

WILLS—*Contest on Advice of Counsel After Fair Disclosure of Facts Does Not Divest Contestants of Rights Under Will Containing Forfeiture Clause.*

If in the opinion of able, reputable and competent counsel, to whom all the facts known and reasonably obtainable are fully and fairly disclosed, there is probable cause for instituting a suit to contest a will or some portion thereof, and they advise such contest, and a contest is had, a forfeiture clause contained in the residuary clause of the will, that "in

103 W. Va.

case any of my children shall be inclined to be dissatisfied and cause any trouble in the administration of my estate, I direct that they shall be cut off of the provisions of my will, and direct that my executors pay them the sum of $10.00 in lieu of all interest," but containing no devise or bequest over of such estate to any of the other heirs or devisees, such forfeiture clause will not be construed to divest the estate of such contestants, nor to invest the same in the non-contestant heirs or devisees, nor be enforced in their favor in a court of equity.

(Wills, 40 Cyc. pp. 1705, 1706.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Jefferson County.

Suit by J. Henry Dutterer and others against Flora Logan and others to enforce a forfeiture under the will of Jacob H. Dutterer, deceased, as to land, and suit by J. Henry Dutterer, executor of the will of Jacob H. Dutterer, deceased, against R. Stanley Dutterer, executor of the same will, and others, to enforce a forfeiture under the will as to personal property. From decrees for plaintiffs Bessie M. Royer and others appeal.

*Reversed and remanded.*

*Kilmer & Byrer,* for appellants.
*Campbell & Hannis,* and *Brown & Brown,* for appellees.

MILLER, JUDGE:

The purposes of both suits are substantially the same: the first to enforce a forfeiture of all estate, rights and interests, of defendants Bessie M. Royer, Virginia F. Zinn, S. Alberta Flynn, and R. Stanley Dutterer, as devisees of the several tracts of land and interests therein devised to them by the will of the late Jacob H. Dutterer, in favor of the plaintiff J. Henry Dutterer and the defendant Flora K. Logan, the other devisees under the will, pursuant to a provision thereof, and to divide and partition said lands between them; the second, to enforce said forfeiture as to the personal estate of said decedent, in favor of the same parties, on the same ground, and for guidance and direction to said J. Henry

Dutterer, as one of the executors of said will, the defendant R. Stanley Dutterer being the other executor thereof.

The testator, a prosperous farmer, by the eighth paragraph of his will, relied on as the basis for the relief prayed for, after making certain specific devises and bequests of real and personal property to his widow and to his two sons and four daughters, provided:

"VIII.   Direct that all the rest and residue of my estate, real, personal and mixed, of whatsoever kind and character, and wheresoever located, shall be equally divided among my six children, Virginia F. Zinn, Bessie M. Royer, Sarah A. Flynn, Flora K. Logan, J. Henry Dutterer and Robert S. Dutterer. *I further direct, in case that any of my children shall be inclined to be dissatisfied and cause any trouble in the administration of my estate, I direct that they shall be cut off of the provisions of my will, and direct that my executors pay them the sum of $10.00 in lieu of all interest.*" The last clause, italicised, is the forfeiture provision sought to have enforced.

As ground for the alleged forfeiture, the bills allege that in December 1922, after the death of the testator in November 1921, and the probate of his will in December following, disregarding said forfeiture clause, the defendants Zinn, Royer, Flynn and R. Stanley Dutterer, who were inclined to be dissatisfied and to cause trouble in the administration of said estate, instituted a suit in equity in the circuit court for the purpose of contesting and having adjudged as no part of said will paragraph three thereof in favor of J. Henry Dutterer, on the alleged ground that the testator had been induced to execute the same and make the same a part of his will by the fraud and undue influence of the said J. Henry Dutterer and others; that said contest suit was instituted without *probabilis causa litigandi,* and that on the trial of the cause in the circuit court, a verdict had been directed for the defendants, and the bill dismissed, and that on appeal from that decree had been subsequently denied by this court; that plaintiff and Mrs. Logan were in possession of the lands forfeited; and the prayers of the bills were that the lands be

partitioned, and that the personal estate be divided in ac-
cordance with the alleged rights of the plaintiff and his sis-
ter, Mrs. Logan.   The decrees appealed from and now before
us for review granting the relief prayed for, were pro-
nounced on August 2, 1926.

Demurrers and answers to the bills challenge jurisdiction
in equity to enforce the alleged forfeitures; and the answers
set up by way of relief; (1) that the alleged forfeiture clause
is too indefinite and uncertain to constitute the basis of for-
feiture of the vested estates of defendants in the land and
personal property devised and bequeathed to them respect-
ively; (2) that the institution of the contest suit was not with-
in the terms of the will against ''giving trouble in the ad-
ministration of the estate,'' but amounted simply to the as-
serting of a right, for probable cause charged, to test
the validity of the specific provision of the will in favor of
J. Henry Dutterer, on the grounds alleged in their bill; (3)
that the alleged forfeiture clause containing no devise or
bequest over, should be construed as merely an *in terrorem*
provision, not enforceable in equity; (4) that there was
*probabilis causa litigandi*, and the contest was instituted in
good faith, and not for vexatious purposes, and the forfei-
ture clause should not be construed as intending to or to in
fact cut off the devisees from appealing to the courts for a
vindication of their rights and to prevent fraud and impo-
sition upon them by the undue influence of other ambitious
heirs or devisees.

It is quite manifest that if we adopt the principle of the
fourth proposition, and find it applicable to the facts pleaded
and proven in this case, we need not further consider the
other questions so ably and elaborately discussed in briefs
and oral arguments of counsel, for its affirmance and applica-
tion here will be decisive of the rights of the parties to the
present litigation.

It is well settled in those jurisdictions where the rule of
*probabilis causa litigandi* prevails, that an unsuccessful con-
test will not be conclusive of the rights of the contestants

on the question of probable cause for instituting the contest. *Stewart* v. *Sonneborn,* 98 U. S. 187.

In one of the leading cases on the subject, *In Re Friend's Estate,* 209 Pa. St. 442, 449, it is said: "In view of this, we are now asked to say that the prior findings and conclusions of the court below are conclusive that there was not probable cause for this contest. The answer to this is, that the court, on the application for an issue *devisavit vel non,* made its findings and drew its conclusion after it had fully heard both sides, the contestant and the proponents of the will, and it is not to be assumed that they would have been the same if only the contestant and his witnesses had been heard."

And generally, in suits for malicious prosecution, the advice of counsel constitutes a complete defense to an action for damages, if based on facts honestly obtained and fully disclosed. *Sudnick* v. *Kohn,* 81 W. Va. 492; *Turner* v. *Brenner,* 138 Va. 323; *Staunton* v. *Goshorn,* 94 Fed. 52, 60, (C. C. A. Fourth Ct.) ; *Stewart* v. *Sonneborn, supra;* 18 R. C. L. p. 45. If such advice be a defense against a suit for criminal prosecution, it seems to us it ought to be equally so against the forfeiture of vested rights in property, which the law looks upon with the greatest disfavor, and equity will not enforce.

Of course to avoid the consequences of a forfeiture, one claiming the benefits of a devise or bequest made subject to such a condition should be required to put himself clearly within the exception to the general rule. He should indeed have probable cause for instituting the contest. But on the other hand, before a court should deprive one of his right to litigate a just, or an apparent just, cause of action, it should in our opinion be satisfied that his complaint was not for the vindication of what he really believed a substantial right, but for vexatious purposes. *Radochio* v. *Katzen,* 92 W. Va. 342; *Bailey* v. *Gollehon,* 76 W. Va. 322, 328; *Brady* v. *Stiltner,* 40 W. Va. 289; *Porter* v. *Mack,* 50 W. Va. 581, 595. These cases are in accord with the great weight of modern decisions, English and American. *Powell* v. *Morgan,* Vern. 92, 23 Eng. Rep. 668; *Morris* v. *Burroughs,* 1 Atk. 404, 26 Eng. Rep. 256; *Lloyd* v. *Spillet,* 3 P. Wms. 344; 24 Eng. Rep.

1094; *In Re Friend's Estate, supra; Grace* v. *Kleindinst,* 275
Pa. 266; *Smithsonian Inst.* v. *Meech,* 169 U. S. 399; *Fifield*
v. *Van Wyck,* 94 Va. 557; *Tate* v. *Camp,* 147 Tenn. 137;
*Wright* v. *Cummings,* 108 Kans. 667; *Whitehurst* v. *Gotwalt,*
189 N. C. 577, *Re Kennan,* Wis., 205 N. W. 1001; Schouler
on Wills, (5th ed.), §605; 2 Alexander on Wills, 1519.   The
authorities to the contrary mainly relied on to support the
strict rule of enforcement announced in *Cook* v. *Turner,* 15
M. & W. 27, are *Bradford* v. *Bradford,* 19 Ohio St. 546;
*Thompson* v. *Gaut,* 14 Lea, (Tenn.), 310; *Donegan* v. *Wade,*
70 Ala. 501; *In Re Hite,* 155 Cal. 436; *In Re Miller,* 156 Cal.
119; and *Moran* v. *Moran,* 144 Iowa, 451.   In Tennessee the
court in a later case has evidently fallen in with the majority
rule, as will appear from *Tate* v. *Camp, supra,* where it was
decided that a contest in good faith and for probable cause
will not result in a forfeiture.   The *Ohio* case seems to have
been based solely on *Cook* v. *Turner,* and *Thompson* v. *Gaut,*
on the *Ohio* case.   The case in New Jersey of *Hoit* v. *Hoit,*
42 N. J. Eq. 388, also cited and relied on by counsel for plain-
tiff, involved provisions imposing upon contestant the costs
of the proceeding, or compensation out of the funds received
by him from the testator, not the harsh terms of forfeiture
of the entire estate.   The case of *In Re Vom Saal's Will,* 82
Misc. Rep. 531, 145 N. Y. Sup. 307, involved a proposition of
similar character.   Other cases, such as *Donegan* v. *Wade,*
*supra,* involved wills containing bequests over on breach of
conditional forfeitures.   We think there can be no doubt that
the great weight of authority is against the strict enforcement
of forfeitures contained in devises and bequests.   On the
contrary, that when there is *probabilis causa litigandi,* such
forfeitures will not be enforced, certainly not where there
has been no devises or bequests over of the forfeited estate.
This is in accord with the highest judicial authority of this
country, *Smithsonian Inst.* v. *Meech, supra;* and is the rule
in Virginia, *Fifield* v. *Van Wyck, supra;* and is the rule of
sound reason, in our opinion, which we are disposed to adopt
and apply in this case.

The question remains: Was there probable cause for the

contest, and were the facts fully and fairly laid before counsel, and defendants advised by them that there was probable cause? Very able, honorable, and distinguished counsel were employed by defendants. No other evidence of this need be shown than the briefs and oral arguments presented on the hearing. Indeed the briefs and oral arguments of counsel on both sides of the case rarely have been equaled, and seldom excelled, in any cause which has been brought before us; and we are pleased to thus commend the efforts of counsel to aid the court in disposing of cases of this importance.

Of course the contestants and their counsel had before them the very pertinent fact, evidenced by the oft declared purpose of the testator, prior and subsequent to the making of his will, to divide his property according to value as nearly equally as possible among his children. He had so undertaken in a prior will, made in 1916, which the evidence tends to show was obtained from the testator by his son Henry, or delivered to him, after the last will was made, and burned up by him as shown, in the presence of one or two of the other members of the family, including the widow. Pursuant to his declared purpose the testator, prior to the making of his last will, had actually given in lands or money, or both, to each of his children sums aggregating about $28,000.00. And so jealous was he of this purpose, as it seems, that some time after he made the will, according to the evidence of his son Henry, he concluded that in his gift of land to Mrs. Logan he had probably not given her as much in actual value as she was entitled to, and then gave her United States bonds, one of $1,000.00 and one of $500.00, to equalize his gift to her. He then appeared to have no favorites among his children. His favoritism appeared at no time until the day he made his last will. Then, for the first time, for some reason, not apparent, he became disposed to prefer Henry over all the rest of his children, by devising to him the choicest of all his possessions, his home farm of eighty acres, estimated to be worth from $30,000.00 to $50,000.00, including a very fine orchard of forty-eight acres, with residence, barn and out buildings, subject only to the payment of $2,000.00 to each

of his other five children, in five equal annual installments
of $400.00 each, without interest, with right to immediate
possession to all except the twenty-eight acres of cleared land
and buildings thereon, to be occupied by the widow during
her life time, and requiring him to pay her annually one-
fourth of the proceeds of the orchard for her support, he to
look after her and provide for her at her expense. The widow
and all the other children, unless it be Mrs. Logan, were sur-
prised and dissatisfied on account of the unequal gift to
Henry; and the widow was induced to renounce the provisions
of the will in her favor and take such part of the estate as
she was lawfully entitled to. And there is some evidence that
Mrs. Logan was also dissatisfied, until she likely concluded
that her interests would be better conserved by allying her-
self on the side of Henry, and the prospects of getting the
benefits of the forfeitures of the estates of the brother and
sisters. The evidence tends to show that Henry was domi-
neering; that he was inclined to ''lord it over'' his father in
his life time, and the other members of the family before and
after the testator's death. His mother says that such was
his disposition, and that he generally got what he went after.
It was not contended that the testator was not possessed of
sufficient testamentary capacity at the time he made his will,
but that being admittedly in a weak physical condition the
night before and the day he executed the will, he must have
been dominated by some outside influence to swerve him from
his manifest and declared purpose before and after making
the will, that his children should share equally in the distri-
bution of his estate. That Henry was in a position to have
exercised such undue influence about the time of the making
of the will, was also established by the evidence; and in con-
nection with the fact of the preference, its inconsistency with
the declared purpose of the testator, and his prior and sub-
sequent dealings with his children, counsel who advised the
contest had the additional facts given them by the contes-
tants, and shown in their testimony. The one of them who
seems mainly to have conducted the contest suit and defended
the present suit, went upon the witness stand and declared

under oath just what was represented to him and on what facts he relied in giving the advice he did respecting the contest.

As briefly summarized and digested as we can do it, he said, in chief: All the facts adduced in evidence on the trial were known to me and my associates. In addition we were advised that Mr. Nelson A. Roberts, (who prepared the will), had told certain of the contestants that Mr. Dutterer had often expressed his intention of equalizing his property among his children, and also that Mr. Dutterer's memory was hazy and bad on the day the will was being prepared.

Counsel were also informed as other witnesses had stated, that Henry Dutterer had boasted before the will was read that he knew more about the contents than any one else, also that he had told his mother, when she complained to him of the provisions made for her, that, ''We thought you were getting enough,'' or words to that effect.

They were also informed that Mr. Dutterer was at the time in a very weak physical condition, due to the character of his disease, and that he had spent a very restless night preceding the day the will was written, and that Henry had told members of the family, including Stanley, that his father had had the worst night he had ever had, and had been delirious, had gotten out of bed, and that he had had a very difficult time to get him back into bed; and with these facts and the facts testified to by the contestants on the trial, counsel had advised the contest.

On Cross-Examination: Counsel said that he did not consult Mr. Dutterer's physician, for the reason that he was satisfied with the facts related by members of the family, that while Mr. Dutterer was in a weak physical condition, he was in all probability of sufficient testamentary capacity to make his will, and his opinion was that by reason of the testator's weak physical condition, and his hazy and faulty memory, it would have been an easier matter to persuade him in that condition than if he had been in perfect mental and physical condition; that he did not realize that it was necessary in contemplation of a contest to consult the testator's physician

as to his ability to resist undue influence the day following his bad night, because he knew that such facts could be established by persons other than a doctor, and that while he knew the rules of evidence relating to incompetency, he was of opinion that the essential facts could be established by competent testimony; and finally, when asked what essential facts could be so established, he replied: ''The fact that Henry was of a domineering nature and had been so all his life; that he had exerted a domineering influence over his father; that his father had personally stated that he intended for his children to share equally in the property, and that the will departed from that intention in the case of Henry to the extent of thirty or thirty-five thousand dollars; the fact that Henry had had the opportunity to influence his father by spending the night with him before the will was written, and also the following night before the codicil was written; the fact that Henry wanted the Beall tract of fifty acres of land; the fact that Henry had told his mother that 'We thought' enough provision had been made for the widow; the fact that within thirty or sixty days before his death, the testator had represented to his wife his intention of equalizing all his children; the fact that we expected Mr. Nelson R. Roberts to testify that Mr. Dutterer was hazy in his memory and had him repeatedly reread certain sentences and paragraphs of the will at the time it was being prepared; the fact that we expected Mr. Nelson R. Roberts to testify that Mr. Dutterer had told him repeatedly of his intention to equalize his children; the fact that Mr. Roberts had stated that he thought the contestants were justified in contesting the will; and we also expected to be able to establish the fact that after Mr. Dutterer's death, and before the will was read, that Henry had boasted that he knew more of the will than any other person, which fact we were not permitted to prove by reason of the rulings of the court that such testimony was not admissible as against Mrs. Logan; and on the further fact that we did not expect Mrs. Logan to object to the introduction of such testimony because of her previously expressed opinion that the will should be contested. And we also expected to

prove, and we did prove that Henry had no particular af-
fection for his father, and had expressed no affection for
him, but on numerous occasions had treated his father with
disrespect before his death, and that after his death he had
told funny stories and made course remarks over the body of
his father; and the further fact that he told one of the tenants
on the day of the funeral that it was not necessary for him
to stop work long enough to attend the funeral; and other
facts and circumstances that could not then be recalled.''

The position of counsel for plaintiff seems to be that de-
fendants were not justified in instituting a contest until
they or their counsel had first pursued every avenue of in-
formation and made certain that they were in possession of
sufficient competent evidence to make the result of the con-
test absolutely certain. We do not understand that any such
rigid rule finds support in the authorities. In addition to
this proposition of counsel, they argue that the forfeiture
clause should be construed as a devise over to the non-con-
testants, and as in effect as if it read: ''I give all the rest of
my property to my six children (naming them); but if any
of them are inclined to be dissatisfied and cause trouble in
the administration of my estate, then the share of him or
them, except $10.00 to each, is to go to those who are not dis-
satisfied and do not cause trouble;'' applying the maxim,
*''Ut res magis valeat quam pereat.''* We reply, as before,
that courts of equity will give the strictest construction to
provisions of forfeiture in deeds and wills, and never en-
large upon them or struggle to uphold them. *Craig* v. *Hukill,*
37 W. Va. 520; *Chambers* v. *Perrine,* 81 W. Va. 321, 325;
*Peerless Carbon Black Co.* v. *Gillespie,* 87 W. Va. 441; 1
Schouler on Wills, (5th ed.), 809. Besides, this maxim of the
law has ample matters left to feed upon without giving the
forfeiture clause any such strained construction as called for.
The exception to the general rule applied here is based on
the theory that the testator, by omitting all devises or bequests
over, or other provisions excluding the right to contest his
will for good cause, did not intend to visit upon his children
any such grave consequences. This construction leaves the

maxim to apply to vexatious or unfounded litigation, and so construed the forfeiture clause will not wholly perish.

For the foregoing reasons we are of opinion to reverse the decrees and to remand the causes for further proceedings. Both causes, we think, are susceptible, by proper amendments, to be converted into suits for partition among all the heirs and devisees of the lands and personal estate, and for a settlement of the accounts of the executors in accordance with the principles herein enunciated.

*Reversed and remanded.*