[No. 710-2.    Division Two.    July 24, 1973.]

*In the Matter of the Estate of* PAUL AUGUSTINE KUBICK, *Deceased.*

MARTIN L. POTTER, *Appellant,* v. PACIFIC NATIONAL BANK OF WASHINGTON *et al., Respondents.*

414

*Martin L. Potter* (of *Potter & Ruff*), for appellant.

*John J. Paglia*, for respondents.

PEARSON, C.J.—This appeal concerns rulings of the Superior Court for Pierce County on two petitions filed during administration of the estate of Paul Augustine Kubick. Mr. Kubick died testate in Pierce County on February 4, 1971, leaving a substantial estate in that county.

The trial court denied the petition of Kubick's daughter and principal beneficiary, Mary Lou Cathersal, seeking to remove the defendant, Pacific National Bank of Washington. The bank was named executor in the will and was duly qualified as such. No appeal is taken from that ruling, and it stands affirmed.

The trial court also denied the petition of a guardian ad litem who was appointed to represent the interests of Mrs. Cathersal's three minor children, who were contingent beneficiaries under Kubick's will. The guardian, on behalf of the children, sought to invoke an "in terrorem" clause in Kubick's will against Mrs. Cathersal. That provision would allow the sum of 1 dollar to "any person . . . [who] shall contest this will or object to any of the provisions hereof . . . ." The guardian asserted in the petition that Mrs. Cathersal's attempt to remove the bank as executor and have herself appointed instead required a forfeiture of her inheritance under the "in terrorem" provision. This petition was denied by the trial court without permitting the guardian to offer evidence in support of the petition. From this ruling, the guardian appeals. For the reasons stated below, we reverse. A more detailed statement of the

nature of the petition and the procedure which occurred in the trial is required.

Kubick's will established a trust for Mrs. Cathersal and contingently for her children. The bank was named as both executor and trustee. Mrs. Cathersal's petition claimed two reasons for its removal as executor: (1) conflict of interest, and (2) a substantial saving of expense to the eventual distributee or distributees if she, rather than the bank, served.

The alleged conflict of interest stemmed from the fact that the bank was also executor and trustee of the estate of Ludmila Louise Kubick. Mrs. Kubick was the mother of Paul Kubick and grandmother of Mrs. Cathersal. Her estate was still subject to administration at the time the bank qualified as executor of Paul Kubick's estate.

Mrs. Cathersal's petition alleged that if the bank were executor of both estates, by virtue of article four of her grandmother's will, the bank "either has taken or must take a position that has, could or will . . . conflict with the best interest of this estate . . ." We have set forth article four in the margin.[1]

Mrs. Cathersal contended that the bank overvalued the grocery business referred to in article four and that her father never made the election contemplated by that provision. Moreover, her father had only a 50 percent interest in the Ludmila Kubick estate. Consequently, she argues that if the executor is the same in both estates, a conflict of interest exists, since the bank will have the opportunity of

---

[1]Article four of the will states, in part:

"I give, devise and bequeath unto my son, Paul Kubick of Tacoma, Washington, all my interest both real and personal in and to the Midway Grocery located at Six-seven-zero-four South Park Avenue, Tacoma, Washington, including the North one-half of Lot 11 and the South seventy-five feet of the East eighty feet of Lot 11 and Lot 12 in Block 2 of Midway Addition to Tacoma, Washington, and any adjacent additions thereto to said land, including the buildings located upon said lands. Provided that if my son does not choose to accept this bequest and devise . . . my son shall be entitled to substitute from the residue of my estate such other property of like value as he may choose, or his successor in interest may choose."

placing the overvalued business in her father's estate to the detriment of the beneficiaries.

The bank denied that the grocery had been overvalued and asserted that Paul Kubick had made the article four election before his death.

The guardian's petition charged that Mrs. Cathersal had breached the terms of article six of Paul Kubick's will. That provision, entitled "Provisions to Prevent Contest of Will," provides:

> I have purposely made no provisions herein for any other person whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this Will or not mentioned herein shall contest this will or object to any of the provisions hereof, I give to such person so contesting or objecting the sum of One Dollar and no more in lieu of the provisions which I have made or which I might have made herein for such person so contesting or objecting; Provided, that this provision for forfeiture shall not affect any contest or objection which is found by the court wherein this Will is admitted to probate to have been made in good faith and for probable cause and in such case the court in its discretion may allow the expenses incurred by the contesting party to be paid from my estate.

The proceedings which are pertinent to this appeal are as follows. The case came on for trial first upon Mrs. Cathersal's petition. On two occasions the guardian sought by cross-examination to bring out matters relevant to his petition. On one occasion during cross-examination of Mrs. Cathersal, the court rejected the guardian's offer of proof that Mrs. Cathersal and her attorney father-in-law, Frank L. Cathersal, "plotted to get this estate into their control contrary to the wishes of the decedent and any consultation with Mr. Paglia [Mrs. Cathersal's attorney] was not in good faith . . ." Subsequently, the trial court sustained an objection to the guardian's similar line of questioning of Frank L. Cathersal. At that time, the trial court stated, "If you [meaning the guardian] want to call [Frank L. Cathersal] as your own witness and be bound by his answers,

that's all right, but you are going way beyond what he was called for." This remark was made within a few minutes of the close of petitioner's case.

As soon as petitioner rested, the guardian moved for dismissal of Mrs. Cathersal's petition for insufficient evidence. Her counsel argued against the motion and the bank joined the guardian in moving for dismissal. The court then stated:

> It is not necessary to argue any more; the Court is ready to rule. In fact, it won't be necessary to take any more testimony. It is all before the Court, and I feel that any testimony that would be offered by the bank would just be surplus.
>
> The Court will summarily grant the motion to dismiss the petitioner's petition to revoke appointment of the executor and letters testamentary and appointing her as administratrix with will annexed.[2]

The court thereupon entered oral findings and in the course of these findings stated, "Of course, then we come down to the petition of the guardian ad litem, and of course, the ruling of the Court on the bank's petition answers the prayer of the guardian ad litem . . ." The court then went on to find that Mrs. Cathersal had good cause to bring her petition and that her consultation with an attorney established that her challenge was made in good faith and for probable cause.

These oral findings were subsequently reduced to writing and entered. The guardian appeals from the dismissal of his petition. The six assignments of error relate to the trial court's finding of good faith and probable cause and the conclusion that Mary Lou Cathersal had not breached the forfeiture provision of her father's will, necessitating a dismissal of the guardian's petition.

In our view, the finding of fact that Mary Lou Cathersal sought the advice of counsel in good faith and that she had

---

[2]The trial court noted that the two complaints made against the bank were assertable only in the estate of Ludmila Louise Kubick, which estate was not before the court in the present proceedings.

probable cause to bring her petition was improperly entered.

■ We think the trial court erred in summarily dismissing the guardian's petition and in refusing to take any testimony on the question raised in that petition. The guardian had informed the court on two separate occasions that he claimed Mrs. Cathersal had conspired to frustrate Paul Kubick's testamentary dispositions. On those two occasions, during presentation of Mrs. Cathersal's petition, the guardian was denied the right to cross-examine into the issues raised by his petition. These rulings were correct, since the matters sought to be elicited went beyond the scope of the direct examination which had concerned removal of the bank as executor. But the court recognized the guardian's right to call these witnesses as a part of his case, a right which was later denied.

The posture of the case, when the bank and the guardian challenged the legal sufficiency of the evidence, presented but one question for the trial court which could be considered in one of two ways: (1) after viewing the evidence and all reasonable inferences favorable to petitioner, did she, as a matter of law, establish prima facie grounds for removal of the bank as executor; or (2) after weighing the evidence, did petitioner convince the court, as the trier of fact, that the bank should be removed as executor? *See Hunt v. Matthews,* 8 Wn. App. 233, 505 P.2d 819 (1973).

The trial court elected the latter alternative, weighed the evidence, and found that she had not established a factual or legal basis for removing the bank as executor. Since that determination is not challenged by either party on appeal, it becomes the established fact and law on appeal. CAROA 43.

This ruling, however, would not, in our opinion, be conclusive or determinative of the issue raised by the guardian's petition and the ruling on that petition was premature. A party with an affirmative cross claim (petition) of his own does not, as Mrs. Cathersal asserts, waive his cross

claim by challenging the sufficiency of his opponent's evidence. CR 41 (b) (3) does not compel her contention.

Mrs. Cathersal, however, urges several theories as to why the trial court's action is sustainable in law. First, it is claimed that the suit challenging the bank's right to administer the estate is not a "contest" of Kubick's will within the meaning of that word, as used in the in terrorem clause. Therefore, it is urged as a matter of law that guardian's petition was subject to summary dismissal when the nature of respondent's action (petition) was established.

This argument would be more persuasive had the in terrorem clause been restricted to *contests* of the will. However, the provision specifically applies to any person who shall *"contest this will or object to any of the provisions hereof . . ."* (Italics ours.) In light of that language, we need not determine whether an action to remove a nominated executor is a will contest.

■ Secondly, it is urged that if the in terrorem clause effectively prohibits challenge to the qualifications of an administrator, it would violate the public policy of this state as expressed in RCW 11.28.020, 11.28.160 and 11.28.250. The first of those statutes authorizes an interested person to file objections to appointments of executors; the second grants the court power to cancel letters of administration and appoint substitutes; and the third authorizes revocation of letters of administration on certain specified grounds.

Respondent cites no Washington cases which have considered this question and we find none. We would agree with respondent that if the in terrorem clause purported to prohibit, under penalty of forfeiture, a good faith challenge to the appointment of an executor pursuant to a will, such prohibition might very well violate the policies inherent in RCW 11.28.020. *See Railey v. Skaggs,* 212 So. 2d 86 (Fla. App. 1968). *See In re Estate of Chappell,* 127 Wash. 638, 221 P. 336 (1923).

However, that is not the case here. The provision under consideration does not require forfeiture where the chal-

lenge is made "in good faith and for probable cause." We see no public policy against a forfeiture where an heir makes a bad faith challenge to some provision in a will.

Thirdly, respondent contends that the undisputed fact that she acted under advice of counsel compels the conclusion that her petition was made in good faith and for probable cause. *Dutterer v. Logan,* 103 W. Va. 216, 137 S.E. 1, 52 A.L.R. 83 (1927).

In *Dutterer v. Logan, supra,* the Supreme Court of West Virginia posed the issue as follows at page 221:

> The question remains: Was there probable cause for the contest, *and were the facts fully and fairly laid before counsel,* and defendants advised by them [counsel] that there was probable cause?

(Italics ours.)

We agree that a suit such as this brought on advice of counsel is persuasive of the bona fides of the suit. We are not prepared to say, however, that such result is conclusive where the guardian has not been given an opportunity to establish what facts were before counsel when and if he advised the suit in the face of the in terrorem clause.

We do agree with the proposition enunciated in *Dutterer v. Logan, supra,* however, that if Mrs. Cathersal laid the facts fully and fairly before her attorney and acted on his advice in bringing the action, she must be deemed to have acted "in good faith and for probable cause" as a matter of law. Such a determination must await presentation of the guardian's evidence on this issue.

We have considered the remaining contentions made in support of the trial court's dismissal of the guardian's petition and do not find them persuasive. Nor are we persuaded by the guardian's contention that because Mrs. Cathersal was unsuccessful in her petition she must be deemed to have acted in bad faith and without probable cause.

Accordingly, the decree of the court is affirmed in part, reversed in part, and remanded for vacation of the findings

of fact and conclusions of law and the decree which bear upon the guardian's petition. We remand for trial on that petition.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied August 30, 1973.

Review denied by Supreme Court November 7, 1973.