IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of: | ) | No. 34200-0-III |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| MARIA G. PRIMIANI. | ) | |
| | ) | |

LAWRENCE-BERREY, A.C.J. — Frank Primiani appeals from the trial court's

memorandum opinion that dismissed his will contest, enforced the no contest clause of

the will, and imposed terms on him for a bad faith discovery abuse. He raises a number

of arguments. We generally disagree with his arguments, but remand to the trial court for

entry of findings concerning the enforceability of the no contest clause.

FACTS

In 2008, Maria Primiani executed her last will and testament. The will appointed

her daughter, Anna Primiani Iliakis, as the personal representative with nonintervention

powers, and appointed Frank as successor personal representative.[1] The will divided

---

[1] Given the common last name, the parties' first names are used for purposes of
clarity.

Maria's real property in Spokane County between Frank and Anna. The will also contained the following no contest clause:

> In the event that any person shall contest this Will or attempt to establish that he or she is entitled to any portion of my estate or to any right as an heir, other than as herein provided, I hereby give and bequeath unto any such person the sum of one dollar.

Clerk's Papers (CP) at 307.

Maria died in December 2014. On January 29, 2015, the trial court admitted Maria's will to probate and appointed Anna as the estate's personal representative. Frank wished to preserve potential claims, which he believed could be the subject of a creditor's claim or petition under the Trust and estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. The estate and Frank agreed to extend the four-month statutory deadline to file creditor's claims and will contests by 90 days. The new deadline was August 20, 2015.

On August 19, 2015, Frank filed a TEDRA petition, entitled "petition for determination of claims of the estate against Anna and Michael Iliakis, for an accounting and removal of personal representative and for partition of acreage." CP at 1 (capitalization omitted). Frank filed the petition under the probate cause number rather than as a new action. The petition asked the court to partition Maria's real property, sought damages on behalf of the estate from Anna and her husband Michael, alleged

2

violations of the abuse of vulnerable adults act, chapter 74.34 RCW, sought to remove

Anna as personal representative, and asserted "[u]ndue influence, misrepresentation, or

concealment involving making or execution of [the] Will." CP at 2.

The certificate of service stated that Frank mailed the petition to Brant Stevens, the

attorney representing Anna in her capacity as personal representative. Frank did not

personally serve the petition on Anna.

On November 18, 2015, the estate filed an answer to Frank's petition and raised

multiple affirmative defenses. The affirmative defenses included that Frank lacked

standing to assert claims on behalf of the estate, and that Frank had failed to bring a will

contest within the statute of limitations as extended by the parties. The answer requested

that the court enforce the will's no contest clause and reduce Frank's award to one dollar.

On December 1, 2015, Frank served the estate a subpoena for Maria's medical

records from Providence Visiting Nurses Association (VNA) Home Health (Providence).

The subpoena demanded all records of services Providence had provided Maria in the last

10 years. The estate called Providence's records department and instructed it not to

release Maria's medical records until the court could hear the matter. Providence agreed

it would not. The estate sent Providence a letter memorializing the telephone

conversation.

The estate then e-mailed Frank, stating it objected to the subpoena on the grounds that Maria's medical information was both privileged and irrelevant. The estate told Frank it had asked Providence to hold off putting the records together until the parties could address the issue. The estate also e-mailed Frank a copy of its letter to Providence about not releasing Maria's medical records.

On December 5, Frank served the estate a subpoena for the deposition of Maureen Benson, who was a Providence social worker who had met with Maria in 2011 and 2014. The deposition was scheduled for late that month.

On December 11, the estate called Providence to confirm receipt of its letter, and also to confirm it would not disclose the documents by the end of the week, which was the deadline for the subpoena. During this conversation, Providence told the estate that Frank's attorney had picked up the documents the day before, on December 10.

In light of this conversation, the estate moved for a protective order quashing Frank's subpoenas for Providence's medical records and for Ms. Benson's deposition. The court held a hearing on the estate's motion.

At the hearing, Frank's attorney acknowledged he had obtained the records, reviewed them, e-mailed them to his client, and knew the estate had objected to this. Frank's attorney also indicated he needed the medical records for the will contest. Anna's

attorney argued there was no will contest. Frank's attorney disagreed. He argued the undue influence allegation in the August 19 TEDRA petition constituted a will contest.

The court issued a temporary protective order. The court found that Providence's medical records were irrelevant because Providence provided Maria healthcare services years after she executed her will. The court further found that Frank's attorney obtained the records in violation of CR 45, the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the Washington Uniform Health Care Information Act (UHCIA), chapter 70.02 RCW. The court quashed Frank's subpoenas, ordered Frank to return all records to Providence, and ordered Frank to destroy any copies he still possessed. The court reserved the issues of attorney fees and sanctions relating to the protective order.

Following the hearing, the estate moved for a permanent protective order, and to dismiss Frank's other claims. The estate argued Frank never served the personal representative with the petition. The estate also moved to enforce the no contest clause in the will. Frank responded that the current version of the will contest statute did not require personal service. Frank also alleged Anna and Michael abused and exploited Maria and unduly influenced the will. Frank filed old letters between Maria and Anna to support his claims of exploitation of a vulnerable adult and undue influence. Frank asked

the trial court not to enforce the no contest clause and argued he had commenced the will

contest in good faith and with probable cause.

On January 22, 2016, the court heard argument on the issues. At the hearing, the

estate argued that under *In re estate of Jepsen v. Miles*, 184 Wn.2d 376, 358 P.3d 403

(2015), the court lacked jurisdiction to consider Frank's will contest because Frank failed

to personally serve the personal representative. Frank argued he substantially complied

with the service requirements. After listening to counsel's arguments, the trial court took

the matter under advisement and indicated it would issue a ruling soon.

A few days after the hearing, Frank e-mailed the trial court's judicial assistant a

request to file a supplemental brief addressing *Jepsen*, 184 Wn.2d 376. Counsel attached

his supplemental memorandum to his e-mail. The estate objected. The court's judicial

assistant notified all parties that the posthearing communication was untimely, that the

court would not review it, and that the court would issue its ruling as soon as possible.

On February 23, 2016, Frank personally served Anna with the petition.

The trial court soon after issued an opinion on the estate's motions. The court

noted that to commence a will contest, there must be timely personal service on the

personal representative and Washington courts strictly enforce this requirement. The

6

court found that Frank did not personally serve the will contest on the personal representative and dismissed his will contest.

The trial court awarded the estate attorney fees for the costs it incurred in seeking the protective order for the medical records. The court found Frank's attorney acted in bad faith when he obtained the medical records after the estate objected. The court further enforced the will's no contest clause against Frank.

Frank sought discretionary review in this court. A commissioner of this court determined that the trial court's memorandum opinion was a final order and, therefore, appealable as a matter of right.

## ANALYSIS

A.  SERVICE OF WILL CONTEST

Frank argues the trial court erred by dismissing his will contest because he properly served the estate based on provisions of TEDRA. He argues personal service was not required. Alternatively, he argues he substantially complied with the service requirements. We disagree.

1.  *Proper service to commence a will contest*

One who wishes to contest a will must file a petition within four months of the will being admitted to probate. RCW 11.24.010. The four month period is tolled provided the

petition is timely filed and the personal representative is served within 90 days of the petition's filing. *Id.* "If, following filing, service is not so made, the action is deemed to not have been commenced for purposes of tolling the statute of limitations." *Id.*

Here, Frank filed his petition contesting the will on August 19, 2015, one day before the extended deadline agreed to by the parties. RCW 11.24.010's tolling provision required Frank to personally serve Anna within 90 days of filing his petition. Frank did not personally serve Anna until long after the 90 days expired.

Frank argues the legislature changed the service requirement when it enacted TEDRA, and that the will contest statute now incorporates TEDRA's notice provisions. However, the requirement of personal service of the petition on the personal representative arises from RCW 11.24.010, which is not part of TEDRA. TEDRA does not supersede these requirements. RCW 11.96A.080; *In re estate of Kordon*, 157 Wn.2d 206, 212, 137 P.3d 16 (2006); *In re estate of Harder*, 185 Wn. App. 378, 385, 341 P.3d 342 (2015).

2.    *Substantial compliance is not sufficient*

Frank also argues he substantially complied with the service requirements when he served the petition on Anna's attorney. We disagree that substantial compliance is sufficient.

8

In *Jepsen*, Virginia Jepsen's will was admitted to probate and her son filed a petition contesting the will. *Jepsen*, 184 Wn.2d at 378. The son's attorney e-mailed the petition to the personal representative's attorney the same day it was filed. *Id.* The personal representative moved to dismiss the will contest on the basis that she was not personally served with the petition within 90 days. *Id.* The son argued that personal service was a defense that was waivable if not timely asserted. *See id.* The trial court originally rejected the argument, but on reconsideration agreed with it. *Id.*

The *Jepsen* court stated the statutory personal service requirement for commencing will contests was unambiguous and required no construction. *Id.* at 380. The *Jepsen* court held that because the personal representative was never personally served with the will contest, the will contest was not timely and the probate of Virginia Jepsen's will was binding and final. *Id.*

The *Jepsen* court also held that the statutory requirements for commencing will contests have always been strictly enforced and were not subject to being impliedly waived under CR 12(h)(1). *Id.* at 381, 382 n.7.[2] Because the statutory requirements for

---

[2] An express waiver of personal service, such as a personal representative's attorney signing an acceptance of service, might create equitable estoppel. *See Jepsen*, 184 Wn.2d at 380 n.4.

commencing will contests have always been strictly enforced, we reject Frank's substantial compliance argument.

Because Frank failed to timely personally serve Anna under RCW 11.24.010, the probate of Maria's will is binding and final. We conclude the trial court properly dismissed Frank's petition contesting the will.

B.   FRANK'S STANDING TO BRING CLAIMS ON BEHALF OF ESTATE

Frank argues the trial court erred when it concluded he did not have standing to allege violations under chapter 74.34 RCW, relating to the abuse of vulnerable adults, and under chapter 11.84 RCW, relating to the inheritance rights of slayers or abusers. He acknowledges that Anna, as the estate's personal representative, was the only one with authority to bring these claims on behalf of the estate. However, he contends his TEDRA petition included a request to remove Anna as personal representative.

Only the personal representative has the authority to "maintain and prosecute" actions on behalf of the estate. RCW 11.48.010. Because Frank was not the personal representative, he had no authority to bring claims under chapter 74.34 RCW and chapter 11.84 RCW.

On December 26, 2016, Anna passed away from lung cancer. Thus, Frank's request to remove her as personal representative is moot. After Anna's death, this court

granted the estate's motion for an order extending the trial court's authority to appoint a successor personal representative. Under RCW 11.48.010, this individual will have the prerogative to decide whether to pursue these claims on behalf of the estate.

C.   NO CONTEST CLAUSE

Frank argues the trial court improperly enforced the no contest clause because it never found he prosecuted the will contest in bad faith and without probable cause. He contends the evidence he offered the trial court, such as the letters from Maria to Anna, establish a prima facie case that he contested the will in good faith and with probable cause.

1.   *The trial court enforced the no contest provision without the requisite findings*

Generally, no contest clauses in wills are enforceable in Washington. *In re estate of Mumby*, 97 Wn. App. 385, 393, 982 P.2d 1219 (1999). The breadth of the rule's exception is uncertain. We therefore take this opportunity to provide some guidance.

In *In re Chappell's estate*, 127 Wash. 638, 221 P. 336 (1923), a son unsuccessfully challenged a trust created in his father's will on the basis that the trust violated the rule against perpetuities. *Id.* at 639-40. Having lost that challenge, the son then sought to avoid application of the no contest clause in the will. *Id.* at 640. That clause barred any heir from receiving any distribution of property in the event the heir challenged the will.

11

*Id.* The son argued that a court should not enforce a no contest clause to the extent the challenge was based on public policy grounds, such as the rule against perpetuities, as opposed to personal grounds, such as the soundness of a testator's mind. *Id.* at 640-41.

The *Chappell* court reviewed holdings of various states throughout the country. *Id.* at 641-45. The *Chappell* court approvingly noted decisions that enforced no contest clauses if the will contest was brought on personal grounds. For instance:

> "A testator has the lawful right to dispose of his property upon whatever condition he desires, as long as the condition is not prohibited by some law or opposed to public policy, such as conditions in restraint of marriage or of lawful trade, and when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions of his will, the courts rightly hold that no legatee shall without compliance with that condition receive his bounty, or be put in a position to use it . . . ."

*Id.* at 642 (internal quotation marks omitted) (quoting *In re estate of Miller*, 156 Cal. 119, 121-22, 103 P. 842 (1909)). The rule adopted in *Chappell* protects the rights of heirs who seek to invalidate a will's provision on public policy grounds, provided the grounds were asserted in good faith and with probable cause. *Id.* at 646.

In *In re estate of Kubick*, 9 Wn. App. 413, 513 P.2d 76 (1973), a daughter sought to remove a bank as the will's executor on the basis that the bank had a conflict of interest. *Id.* at 414. The no contest clause reduced the inheritance of any person who contested any provision of the will to one dollar. *Id.* at 416. The clause contained a

12

proviso: "'[T]his provision for forfeiture shall not affect any contest or objection which is

found by the court wherein this Will is admitted to probate to have been made in good

faith and for probable cause.'" *Id.* The trial court dismissed the daughter's petition. *Id.*

at 417. However, the trial court found that the daughter's petition was brought in good

faith and for probable cause and, because of the proviso, it did not reduce her inheritance.

*Id.*

The *Kubick* court held that the clause was enforceable as written because it saw

"no public policy against a forfeiture where an heir makes a bad faith challenge to some

provision in a will." *Id.* at 420. The *Kubick* court further held if the daughter "laid the

facts fully and fairly before her attorney and acted on his advice in bringing the action,

she must be deemed to have acted 'in good faith and for probable cause' as a matter of

law."[3] *Id.* at 420.

The *Kubick* court also addressed the daughter's argument that the no contest clause

violated public policy, as expressed in RCW 11.28.020, .160 and .250, by prohibiting

challenges to the appointment of an administrator. *Id.* at 419. The court noted that those

---

[3] The *Kubick* court relied on *Dutterer v. Logan*, 103 W. Va. 216, 137 S.E. 1 (1927), which fashioned this rule to protect beneficiaries from the harsh consequences of forfeiture in the event the facts at trial developed differently or the beneficiary's attorney made a legal error. *See id.* at 2-3. It follows, therefore, that to achieve the policy behind this rule, the will contestant must show he or she reasonably relied on the attorney's

13

statutes allowed interested persons and courts to challenge and replace estate administrators. *Id.* The *Kubick* court, in dicta, noted "if the . . . clause purported to prohibit, under penalty of forfeiture, a good faith challenge to the appointment of an executor pursuant to a will, such prohibition might very well violate the policies inherent in RCW 11.28.020." *Id.* This dicta is consistent with *Chappell* because it focuses on public policy reasons for invalidating a no contest clause.

In *estate of Mumby*, 97 Wn. App. 385, the testator used a trust to convey and bequeath 38 acres of wooded property to a neighbor friend. *Id.* at 388. The trust included a clause that disinherited any person who contested the trust. *Id.* at 393 n.6. The testator's daughter, an heir to the residuary, petitioned to invalidate the trust. *Id.* at 388. After a trial, the trial court found there was no undue influence, denied the daughter's petition, and enforced the no contest clause in the trust. *Id.* at 391. On appeal, the *Mumby* court cited *Kubick* and *Chappell* for the proposition that no contest clauses are inoperable if a will contest is brought in good faith and with probable cause. *Id.* at 393. But as explained above, that is not the holding of those two cases. *Chappell* limited its holding to will contests based upon *public policy* grounds that are supported by good faith

advice in pursuing the will contest.

14

and probable cause, and *Kubick*'s holding was based upon the good faith and probable cause safe harbor contained in the no contest clause's proviso.

Nevertheless, the estate does not argue against *Mumby*'s holding that a no contest clause is inoperable if the challenger brings his or her contest in good faith and with probable cause. Here, the trial court failed to enter findings as to whether Frank brought his will contest in good faith and with probable cause.

### 2. *Remedy*

The estate asks this court to review the record and find as a matter of law that Frank did not bring his will contest in good faith or with probable cause. Alternatively, the estate asks us to remand so the trial court may enter appropriate findings to support its enforcement of the no contest clause.

An appellate court does not make initial findings of fact and, where the trial court fails to enter sufficient findings, remand is the proper remedy. *State v. J.C.*, 192 Wn. App. 122, 133, 366 P.3d 455 (2016); *see Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013). "However, '[w]hen a trial court fails to make any factual findings to support its conclusion, and the only evidence considered consists of written documents, an appellate court may, if necessary, independently review the same evidence and make the required findings.'" *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 808, 225

15

P.3d 213 (2009) (alteration in original) (quoting *In re Firestorm 1991*, 129 Wn.2d 130,

135, 916 P.2d 411 (1996)).

Here, resolving the factual questions of whether Frank contested the will in good

faith and with probable cause requires admitting additional evidence, and weighing the

relevance and persuasiveness of that evidence. This likely requires a hearing.[4] Because

the trial court is more appropriately situated to conduct these tasks, we remand so the trial

court may enter appropriate findings. In remanding, we do not suggest whether the trial

court's findings should favor one party or the other.

D.     ALLEGED VIOLATION OF APPEARANCE OF FAIRNESS DOCTRINE

Frank argues the trial court violated the appearance of fairness doctrine because it

allowed the estate to discuss *Jepsen*, 184 Wn.2d 376 for the first time at the January 22,

2016 hearing, refused to consider his supplemental brief addressing the case, and then

relied on *Jepsen* in its ruling.

"An appearance of fairness claim is not 'constitutional' in nature under RAP

2.5(a)(3) and, thus, may not be raised for the first time on appeal." *In re Guardianship of*

---

[4] The estate argues that this court should not consider some of Frank's evidence, such as Maria's 1998 letter to Anna, because the letter "has yet to be admitted in court." Br. of Resp't at 17. The estate also argues the letter is unpersuasive in light of the fact that Maria wrote it 10 years before she executed her will. These arguments only further demonstrate why remand is the appropriate remedy.

*Cobb*, 172 Wn. App. 393, 404, 292 P.3d 772 (2012); *see also City of Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 863, 586 P.2d 470 (1978) ("Our appearance of fairness doctrine, though related to concerns dealing with due process considerations, is not constitutionally based."). Frank never objected at the hearing to the estate's reliance on *Jepsen*, 184 Wn.2d 376, nor does the record show he ever objected to the trial court's refusal to consider his supplemental brief. Accordingly, Frank failed to preserve this issue for appeal. *See Cobb*, 172 Wn. App. at 404.

E.  PROTECTIVE ORDER FOR PROVIDENCE MEDICAL RECORDS

Frank argues the trial court erred when it quashed his subpoenas for the Providence medical records and Ms. Benson's deposition. He argues that substantial evidence does not support the trial court's finding that he acted in bad faith, that Washington's UHCIA does not provide a private right of action to sue nonhealthcare providers who violate the act, and that the records were relevant to his allegations in his will contest.[5]

---

[5] Frank also argues Maria waived the confidentiality of her medical records before her death. Although he brought this issue to the attention of the trial court, *see* CP at 199-202, he fails to provide any evidence or cite any legal authority to support this contention. We therefore will not consider this argument on appeal. *See West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (appellate court will not consider bald assertions lacking cited factual and legal support).

CR 45 requires a court to quash or modify a subpoena if the subpoena requires disclosure of privileged or protected information and no exception or waiver applies. CR 45(c)(3)(A)(iii). Under the UHCIA, unless an exception applies, "a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization." RCW 70.02.020(1). The trial court found that Maria's medical records were protected. Accordingly, the trial court properly quashed Frank's subpoenas.

### 1. *Bad faith*

Frank argues substantial evidence does not support the trial court's finding that he acted in bad faith.

Here, the estate e-mailed Frank an objection to the subpoena on the basis that it requested Maria's privileged medical records. *See* RCW 5.60.060(4); RCW 70.02.020(1), .060. The estate also e-mailed Frank a copy of its letter to Providence about not releasing the records until the trial court could hear the matter. One week later, without notifying the estate or obtaining a court order, Frank went to Providence and picked up the records. The trial court reasonably inferred Frank did this in bad faith.

Frank argues he mistakenly believed he could obtain the records until the estate sought a protective order. He argues this was an honest mistake, rather than bad faith.

18

While this is one possible interpretation of what happened, the trial court found otherwise. When substantial evidence supports the trial court's findings, it is not this court's role to reweigh the evidence and substitute its judgment for the trial court's. *See Bale*, 173 Wn. App. at 458.

Frank also presents a lengthy e-mail chain in which he and the estate discussed the subpoenas. He faults the estate for changing its position, and vaguely asserts the estate agreed to continue the protective order hearing "in consideration" for continuing the deposition. *See* Br. of Appellant at 45. But this e-mail conversation began on December 14—*after* Frank went to Providence and got the records. Again, substantial evidence supports the trial court's finding that Frank acted in bad faith.

### 2. *Attorney fees*

Frank argues the UHCIA does not provide a private right of action to sue nonhealthcare providers, such as attorneys, who violate the act. Frank's argument is unclear, as the estate never brought a cause of action under the UHCIA.

It appears Frank may be challenging the trial court's award of attorney fees to the estate for the expenses it incurred in litigating its motion for a protective order. However, the estate requested attorney fees and sanctions under CR 26, 37, 45, and the court's inherent power to impose sanctions for discovery violations. The estate made clear it did

19

not request attorney fees "from state or federal privacy statutes." CP at 90. At a minimum, the trial court had authority under its inherent power to impose sanctions for bad faith conduct. *See State v. S.H.*, 102 Wn. App. 468, 474-75, 8 P.3d 1058 (2000). The trial court did not err in awarding the estate attorney fees on this basis.

### 3. *Relevance to will contest*

Frank also argues the trial court should have given him access to the medical records because they were relevant to the allegations in his will contest. His argument is moot because we affirmed the trial court's dismissal of his will contest on the basis he failed to timely serve the personal representative.

### F. ATTORNEY FEES

The estate requests attorney fees under RAP 18.9 on the basis that Frank filed a frivolous appeal. RAP 18.9 authorizes an appellate court to order a party who filed a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed." For an appeal to be deemed frivolous under RAP 18.9, the entire appeal must be totally devoid of merit. *In re Recall of Boldt*, 187 Wn.2d 542, 556, 386 P.3d 1104 (2017). Because Frank partially prevailed on the issue of the no contest provision, we decline to impose attorney fees on this basis.

No. 34200-0-III
*estate of Primiani*

Affirmed in part and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

21